UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROSWITHA M. BENNETT,<br><br>     Plaintiff,<br><br>v.<br><br>THE FEDERAL SAVINGS BANK;<br>PHH MORTGAGE CORPORATION;<br>d/b/a PHH MORTGAGE SERVICS; and<br>DOVENMUEHLE MORTGAGE, INC.,<br><br>     Defendants. | Case No. 2:23-cv-00155-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I.   INTRODUCTION

Before the Court is The Federal Savings Bank's ("TFSB") Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. 14. The Motion is fully briefed and ripe for the Court's review. Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). For the reasons set forth below, the Court DENIES TFSB's Motion to Dismiss.

## II.   BACKGROUND

At this stage, the Court assumes, as it must, that the allegations in the complaint are true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff Roswitha Bennett alleges the following:

MEMORANDUM DECISION AND ORDER - 1

Bennett is the owner and resident of the property known as 5856 North Magellan Ct., Coeur D'Alene, Idaho 83815 (the "House"). Dkt. 1, ¶¶ 1–2. TFSB is the current master servicer of the mortgage related to the House and had contracted the loan servicing to Dovenmuehle Mortgage, Inc. ("DMI") through September 30, 2022, and to PHH Mortgage Corporation ("PHH") on October 1, 2022. *Id.* at ¶¶ 3–8.

Bennett and her husband acquired the loan for the House in December 2017. *Id.* at ¶ 25. Bennett's husband passed away in August 2020. *Id.* at ¶ 26. Shortly after her husband's death, Bennett was scammed by another entity, claiming to be TFSB, into paying them her mortgage payments. *Id.* at ¶ 27. Bennett has since attempted to contact and apply for loss mitigation with TFSB, DMI, and PHH to correct the mistake and keep her home. *Id.* at ¶¶ 28–79. After a series of failed applications, and a breakdown in communication with all three (*Id.*), Bennett was threatened with foreclosure and filed the instant Complaint (*Id.* at ¶¶ 37–39, 68, 71, 80).

Bennett claims that TFSB, DMI, and PHH violated § 2605, Servicing of Mortgage Loans and Administration of Escrow Accounts, of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.*, and § 1024.36, Requests for Information, and § 1024.41, Loss Mitigation Procedures, of the federal regulations issued by the Bureau of Consumer Financial Protection implementing that act, Regulation X, 12 C.F.R. § 1024.1, *et seq. Id.* at ¶ 12. TFSB filed a Motion to Dismiss in response (Dkt. 14) and Bennett responded in opposition (Dkt. 30).

### III.  LEGAL STANDARD

A court may dismiss a claim if the plaintiff has "fail[ed] to state a claim upon which

relief can be granted." Fed. R. Civ. P. 12(b)(6). Such a "dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (cleaned up). In considering a Rule 12(b)(6) motion, the Court must view the complaint in the light most favorable to the claimant and "accept[] all well-pleaded factual allegations as true, as well as any reasonable inference drawn from them." *Id.* at 1122.

Still, Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." And while a complaint "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements." *Twombly*, 550 U.S. at 555. In other words, the short and plain statement "must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (cleaned up). "This is not an onerous burden." *Johnson*, 534 F.3d at 1121.

## IV.  DISCUSSION

TFSB alleges that Bennett fails to state a claim because "there is no vicarious liability under RESPA" and that "even if RESPA did provide for a principal's vicarious liability for the acts of its agent, the Complaint contains no allegations that would, if true, render either of TFSB's co-defendants its agent." Dkt. 14-1, at 2. TFSB's arguments center on whether, as a master servicer of the loan, they should be considered a servicer as defined under RESPA who can be vicariously liable for a subservicer. *Id.* at 4. Because if they are

not a servicer, then neither RESPA nor Regulation X will apply to them. *Id.* And if neither RESPA nor Regulation X allows for vicarious liability then Bennett's complaint will have failed to state a claim. *Id.* at 4–5.

Stated another way, whether Bennett has stated a claim turns on two threshold questions. First, under RESPA, is a *master servicer* a servicer? Second, does RESPA allow for vicarious liability between a master servicer and a subservicer? The Court will address each question in turn.

## A. Master Servicers

Here, Bennett's complaint, which must be taken as true and held in the light most favorable to her, alleges that TFSB is a "master servicer" and that DMI and PHH are "subservicers." Dkt. 1, at ¶¶ 6, 8, 17, 57–58, 98, 109, 138, 151, 171. TFSB, in their motion, provided the contracts they have with DMI and PHH. Dkt. 14-1, at 12, 17–69, 71–189.[1] The contracts, both called "Subservicing Agreement" (Dkt. 14-1, at 17, 71) agree with Bennett's complaint that DMI and PHH are subservicers (Dkt. 1, at 6, 8). Given the statutory definition of subservicer includes "performing servicing on behalf of the master servicer," 12 C.F.R. § 1024.31, TFSB is a master servicer not only by its own admission in their motion (Dkt. 14-1, at 17, 71), but also as alleged by Bennett (Dkt. 1, at 98, 151)

---

[1] While normally, the Court cannot refer to documents outside of the complaint, the Court "may consider documents that are referred to in the complaint whose authenticity no party questions." *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). Here, while not included in Bennett's complaint, the contracts are clearly referenced and at issue. *See* Dkts. 1, at ¶¶ 133 (referring to exhibit 9, Dkt. 1-13), 166 (referring to exhibit 16, Dkt. 1-20); 1-13, at 3 (referring to the contract between TFSB and DMI); 1-20, at 2 (referring to the contract between TFSB and PHH). Further, neither party disputes the authenticity or the existence of these contracts. *Id.*; Dkt. 14. "Therefore, the Court can consider the contracts without having to convert the present motion." *Davis v. Minnesota Life Ins. Co.*, 497 F. Supp. 3d 958, 961 (D. Idaho 2020).

and as statutorily defined, 12 C.F.R. § 1024.31. Having established that TFSB is a master

servicer, the question remains whether being a master servicer under 12 C.F.R. § 1024.31

causes a party to be a servicer under 12 U.S.C. § 2605(i)(2) as well.

"Servicer," as a statutorily defined term, means "the person responsible for servicing

of a loan." 12 U.S.C. § 2605 (i)(2). A "person" "includes individuals, corporations,

associations, partnerships, and trusts." 12 U.S.C. § 2602(5). "Servicing" means:

> [R]eceiving any scheduled periodic payments from a borrower
> pursuant to the terms of any loan, including amounts for
> escrow accounts described in section 2609 of this title, and
> making the payments of principal and interest and such other
> payments with respect to the amounts received from the
> borrower as may be required pursuant to the terms of the loan.

12 U.S.C. § 2605 (i)(3). A loan servicer is the person *responsible* for servicing the loan,

not the person who actually services the loan. The "receiving" of payments is not a

necessary requirement for a person to be classified as a servicer, although receiving

payments will cause a person to be classified as a servicer.

Several courts have found that "there can be multiple servicers on the same loan."

*Stephenson v. Chase Home Financial LLC*, 2011 WL 2006117, *2 n.2 (S.D. Cal. 2011);

*see also Kelly v. Fairon & Associates*, 842 F.Supp.2d 1157, 1159 n.3 (D. Minn. 2012)

("There is often more than one servicer on the same note."). And while these courts have

found this based on 24 C.F.R. § 3500.21(a) which was amended in 2014, the current

language of 12 C.F.R. § 1024.31 contains the same language.

"Master Servicer" means "the owner of the right to perform servicing" and "may

[actually] perform the servicing itself or [may] do so through a subservicer." 12 C.F.R. §

1024.31; 24 C.F.R. § 3500.21(a) (2014).[2] "Subservicer" means "a servicer that [who] does not own the right to perform servicing, but that performs servicing [who does so] on behalf of the master servicer." 12 C.F.R. § 1024.31; 24 C.F.R. § 3500.21(a) (2014).[3] Essentially, what distinguishes a master servicer from a subservicer is ownership of the right to perform servicing and the relationship between the two. And while both must exist at the same time—you can't have a master servicer without a subservicer or vice versa—it is possible for a loan to have only a servicer with no master/sub relationship if the loan owner services their own loan. 12 U.S.C. § 2605(i)(2).

A servicer is "the person responsible for servicing of a loan," 12 U.S.C. § 2605(i)(2), and a master servicer "may perform the servicing itself or *do so* through a subservicer," 12 C.F.R. § 1024.31 (emphasis added).[4] In either alternative not only is the master servicer the one *doing* the servicing, either directly or indirectly, but it is also the master servicer who is *responsible* for the loan servicing regardless of who they delegate that servicing task to, hence the name master servicer. The Court therefore rules that a master servicer is a servicer under the statutory definition.

Because TFSB has been established as a master servicer and because master servicers are servicers, TFSB is a servicer which may be held liable under RESPA and Regulation X. The next question the Court considers is whether RESPA allows for vicarious liability between a master servicer and a subservicer?

---

[2] The bracketed language is the additional language found in 24 C.F.R. § 3500.21(a) (2014).
[3] The bracketed language is the alternative language found in 24 C.F.R. § 3500.21(a) (2014).
[4] The Court emphasizes "do so" to highlight that verbiage references the prior phrase: "perform the servicing."

### B.  Vicarious Liability in RESPA

The issue of whether vicarious liability exists in RESPA has not been often litigated. Only one circuit court, the Fifth Circuit, and a handful of district courts, have addressed the issue. The results are split. Regardless of how they have ruled, the various courts have looked to the Supreme Court's assumption that "when Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules." *Meyer v. Holley*, 537 U.S. 280, 285 (2003); *see also City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 709 (1999) (interpreting a "statute in light of the background of tort liability"). And unless Congress has "expressed a contrary intent, the Court has drawn the inference that it intended ordinary rules to apply." *Meyer*, 537 U.S. at 287.

The Fifth Circuit held that "Congress *did* express an intent contrary to the incorporation of traditional vicarious liability rules" when it chose to impose RESPA duties more broadly. *Christiana Trust v. Riddle*, 911 F.3d 799, 805 (5th Cir. 2018). The court went on to explain that when Congress wrote, "[w]hoever fails to comply with any provision of this section," 12 U.S.C. § 2605(f), the term *whoever* was intended for each party to be "responsible solely for their own failures". *Id.* The Court finds this unpersuasive[5] and, rather, is persuaded by its sister district, the Western District of Washington.

---

[5] The term "whoever" does not have a lot of litigation or statutory interpretation defining or limiting it in situations such as this one. Nor is it found in Black's Law Dictionary. However, the Court has found a few instances where Congress and the Supreme Court have interpreted the definition of "whoever."

(continued)

In *Feldmann v. Lakeview Loan Servicing LLC*, in an order denying summary judgment on a vicarious liability claim, the district court there found that "RESPA allows vicarious liability." 2021 WL 1627048, *5 (W.D. Wash. April 27, 2021) (finding that "a species of tort liability" was created by congress when congress wrote the statute, *see Rouleau v. US Bank, N.A.*, 2015 WL 1757104, *7 (D.N.H. April 17, 2015)). In *Feldmann*, the plaintiff purchased her home in 2017 and the servicing rights were sold to Lakeview who transferred subservicing rights to LoanCare. *Id.* at *1. After financial difficulties, the plaintiff applied for a loan modification with LoanCare. After a clerical error, the plaintiff suffered several specific alleged harms. *Id.* at *1–2. The court there found that there was "sufficient evidence for a reasonable jury to return a verdict for Plaintiff." *Id.* at *5.

Similarly, in *Rouleau*, in an order denying a motion to dismiss a vicarious liability claim, the District of New Hampshire found that "RESPA creates a species of tort liability."

---

First, in 18 U.S.C. § 921(a)(1), Congress said, "the term 'person' and the term 'whoever' include any individual, corporation, company, association, firm, partnership, society, or joint stock company." This is similar to the controlling statute in this case, 12 U.S.C. § 2602(5), which states "the term 'person' includes individuals, corporations, associations, partnerships, and trusts." This implies that 'person' and 'whoever' are interchangeable terms that could include multiple entities.

Second, in 18 U.S.C. §1952 (a), Congress enacted a statute that states, "whoever travels in interstate or foreign commerce. . ." and the Supreme Court interpreted this statutory language to mean that "whoever . . . includes private persons as well as public officials." *U.S. v. Nardello*, 393 U.S. 286, 293 (1969). Again, this implies that 'whoever' could include multiple entities.

Finally, and most persuasive to this Court, 35 U.S.C. § 271(h) states that "the term 'whoever' includes any State, any *instrumentality* of a State, *and* any officer or employee of a State or instrumentality of a State acting in his official capacity." (emphasis added). Two points. First, instrumentality means (1) "A thing used to achieve an end or purpose," and (2) "A means or agency through which a function of another entity is accomplished, such as a branch of a governing body." *Instrumentality*, BLACKS'S LAW DICTIONARY (11th ed. 2019). In other words, applicable in this case, the subservicer. Second, "and" implies that both the higher entity and the instrumentality are both potentially liable. In other words, applicable in this case, the master servicer and the subservicer.

The Court finds that 'whoever' means any entity that may be found responsible *can* be found responsible for violation of a statute and this includes those who would be vicariously liable for the actions of their instrumentalities.

2015 WL 1757104, at *7–8 (cleaned up). In *Rouleau*, plaintiffs had fallen behind on their mortgage and applied for a loan modification. *Id.* at *1. One of the defendants, the master servicer, moved to dismiss on the grounds that it was not a servicer, only its subservicer was. While the plaintiffs in that case agreed that a master servicer was not a servicer and the court did not rule on that specific issue, the court did find that vicarious liability existed between the principal master servicer and the agent subservicer under RESPA. *Id.* at *6–7.

Even the State of Idaho has declared that "an agency relationship arises when the principal (1) [E]xpressly grants the agent authority to conduct certain actions on his or her behalf" and views "the question of whether an agency relationship exists as a question of fact for the jury to determine." *Forbush v. Sagecrest Multi Fam. Prop. Owners' Ass'n, Inc.*, 396 P.3d 1199, 1212 (Idaho 2017). And although, as a federal question case, the Court does not need to rely on Idaho Supreme Court cases in reaching its decision, even if it did, such would not help TFSB's position.

Citing *Christiana Trust* and *Forbush*, TFSB argues that control of a principal over an agent is the determining factor in establishing vicarious liability. Dkt. 14-1, at 11. TFSB then argues that Bennett has not alleged TFSB's control over DMI and PHH (Dkt. 14-1, at 11) and points to its own contracts as examples of how it does not control its subservicers (Dkt. 30, at 9–10).

To the contrary, Bennett has alleged TFSB's control over DMI and PHH by repeatedly arguing that TFSB and one of the subservicers acted in concert with each other and that DMI and PHH acted "on behalf of TFSB." *See, e.g.*, Dkt 1, at 17, 29, 48–50. Further, the contracts that TFSB filed with their motion show the complexity and control

that TFSB required of DMI and PHH in order for them to act as subservicers. *See generally* Dkt. 14-1, at 17–189 (illustrating significant control by TFSB over DMI and PHH's actions despite labeling them as "independent contractors").

The Court finds that Bennett has alleged sufficient factual matter to state a claim for relief that is plausible on its face. Additionally, the Court finds vicarious liability is available under RESPA. Whether an agency relationship existed and whether there is any liability here remains to be determined. But Bennett has met her burden at this stage of the case sufficient to defeat the motion to dismiss.

## V.   CONCLUSION

The term "servicer" includes both master servicers and subservicers as both are responsible for the servicing of the loan: one as the owner of the right to service the loan and the other through a delegatory role. The statute creates liability for all servicers who, among other things, "fail to" fulfil statutory requirements, including to "comply" with the statutes related regulations.

Here, Bennett has stated a claim. The complaint sets forth more than labels, conclusions, and a formulaic recitation of the elements. Bennett, rather, alleges sufficient factual matter to state a claim to relief that is plausible on its face. Specifically, she alleges TFSB was a master servicer who violated the statute and controlled the subservices' actions. And taking the complaint as true, and in the light most favorable to the complainant, the Court finds Bennett has stated claims upon which relief may be granted.

///

///

MEMORANDUM DECISION AND ORDER - 10

# VI.  ORDER

The Court HEREBY ORDERS:

1.  TFSB's Motion to Dismiss (Dkt. 14) is DENIED.

DATED: August 21, 2023

David C. Nye
Chief U.S. District Court Judge